IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEAMON L. TATUM, #200389 <br> Plaintiff, <br> v. | * <br> <br> * CIVIL ACTION NO. WDQ-09-243 |
| BOBBY P. SHEARIN <br> CO II J. HAMILTON <br> CO II S. DAYTON <br> DEPARTMENT OF PUBLIC SAFETY <br>   AND CORRECTIONAL SERVICES <br> Defendants. | * <br> <br> * <br> <br> * <br> <br> *** |

MEMORANDUM

I.  Procedural History

The Court received this 42 U.S.C. § 1983 Complaint for damages on February 2, 2009 from Leamon Tatum ("Tatum"), an inmate currently housed at the Maryland Correctional Institution in Hagerstown. *See* Paper Nos. 1 & 23.  Tatum contends that while confined at the Western Correctional Institution ("WCI") on October 17 and 21, 2007, he notified Correctional Officers Hamilton and Dayton that cell mate Eugene Frye had made threats against his life, his plea for help was ignored, and he sustained "permanent injuries" and received medical care as a result of Frye "viciously" assaulting him in his sleep on October 28, 2007.[1]  Paper No. 1.  Tatum also contends that his administrative remedy procedure ("ARP") grievances with WCI Warden Shearin relating to his failure-to-protect claims were "stalled in their tracks" by a "conspiracy" as Shearin refused to respond to original and re-filed ARPs, requiring Tatum to appeal the non-responses to the Commissioner, Inmate Grievance Office ("IGO") and circuit court. *Id*.

---

[1]  In his Complaint Tatum does not mention the nature of his injuries.  The grievances attached to the Complaint, however, reference bitten fingers, "dizzy spells" and "black-outs."  Paper No. 1 at duplicate remedy request, pgs. 6 & 17

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff has filed an opposition thereto and Cross-Motion for Summary Judgment. Paper Nos. 19 & 21. The matter is ready for consideration and may be determined without oral hearing. *See* Local Rule 105.6 (D. Md. 2009).

II.     Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III.    Discussion

Facts

Defendant Sharon Dayton states that she was a tier officer on Tatum's housing tier while he was housed at WCI. Paper No. 19, Ex. A at Dayton Decl. She affirms that "it is not true" that on October 21, 2007, Tatum told her that his cell mate was threatening him. She maintains that had he done so, she would have informed the control center sergeant, who would have taken steps to investigate the allegation and separate the men if needed. *Id*. Dayton states that on October 28, 2007, Tatum approached her on the housing unit tier and told her that his cell mate, Eugene Frye,

2

had assaulted him while he was asleep, hitting him in the face, and biting him on the finger. Paper No. 19, Ex. A at Dayton Decl. Dayton observed that one of Tatum's eyes was bruised and swollen and a finger was bleeding. Because Dayton had no way of determining which inmate had started the altercation or if both inmates had been in aggressive combat, she wrote a notice of infraction on both inmates for fighting. *Id*. An administrative hearing officer subsequently found that Frye was the aggressor and found Tatum not guilty of the rule infraction.

Correctional Officer Joyce Hamilton affirms that she was a "floater" or fill-in officer and was not regularly assigned to Tatum's housing unit or tier. *Id*., Ex. B at Hamilton Decl.. She acknowledges that she filled in for Dayton on several occasions when Dayton was off. *Id*. Hamilton maintains that Tatum never informed her in October 2007 or at any other time that he was being threatened by a cell mate. *Id.*

Defendants state that Tatum's medical records do not substantiate his allegations of dizziness and syncope (spontaneous loss of consciousness or fainting) from Frye's assault. On the day of the assault Tatum was seen by health care staff, given a tetanus immunization and Bactrim antibiotic, and the wound to his right index finger from Frye's bite was bandaged with a sterile dressing. *Id*., Ex. C. Tatum also had a swollen left eye and abrasions to his left cheek. Defendants state that Tatum did not complain of dizziness or fainting. On October 31, 2007, three days after the assault, Tatum was seen by Dr. Masoud Djahanmir for a follow-up concerning the bite to his right index and left pinky finger. An x-ray of his right hand was ordered to rule out a fracture stemming from the bite injury, but the bite wound otherwise appeared clean and well healed. Defendants argue that Tatum again made no mention of dizziness and syncope. On November 13, 2007, Tatum was again seen by Dr. Djahanmir for a cardiovascular/chronic care evaluation and reported no dizziness, headaches or syncope. Paper No. 19, Ex. C. Defendants assert that while Tatum was periodically

3

seen by medical personnel, he made no reports of "intermittent" dizziness or syncope related to the October 2007 assault until February 22, 2008.[2]  Paper No. 19, Ex. C at pg. 23.   Subsequent complaints of dizziness in March and April of 2008, were initially assessed by medical staff as possible side effects of Tatum's psychotropic medications and his dieting and exercising.  *Id.*, Ex. C at pgs. 28-29.  He complained of dizziness in June and July of 2008, and a skull x-ray was ordered with normal findings.   In August of 2008, he also complained of dizziness which he subjectively attributed to the 2007 assault.  An EKG was ordered.

Tatum suffered a fall on September 1, 2008.  His syncope and collapse were diagnosed by a physician as "sick sinus syndrome" or "SSS"[3], with symptomatic bradycardia, possibly caused or exacerbated by Tatum's Atenolol (hypertension) medication.  *Id.*, Ex. C at pgs. 68-69 & 72.  The record indicates that Tatum refused a recommended cardiac pacemaker.  Norvasc was substituted for the Atenolol and beta-blockers were to be avoided.  Defendants maintain that once taken off the Atenolol, Tatum offered no reports of dizziness.  *Id.*

The medical record shows that on November 4 and December 19, 2008, however, Tatum offered complaints of headaches, constant dizziness, and falls, which he subjectively attributed to his fall in September of 2008.  On December 24, 2008, he submitted another sick-call encounter form complaining of dizziness and falling related to "my sick sinus syndrome."

---

[2]  Subjective sick-call complaints of dizziness and unconsciousness relating to the October 2007 assault were made on March 12, 2008, in July of 2008, and on August 19, 2008.

[3]  Sick sinus syndrome or SSS is the name for a group of heart rhythm problems (arrhythmias) in which the sinus node, also known as the heart's natural pacemaker, does not work properly.  In SSS the sinus node beats abnormally, causing slow heart rate, rapid heart rate, or alternating slow and fast rhythms.  *See* www.mayoclinic.com/health/sick-sinus-syndrome.

In Tatum's Opposition and Cross Motion for Summary Judgment he reiterates his original claims. He asserts that on October 17, 2007, he told Hamilton that his cell mate had been threatening him and he wanted one of them moved to another cell. Paper No. 21. Tatum alleges that Hamilton ignored his pleas for help. He further claims that on October 21, 2007, when the threats continued to worsen, he notified Dayton of the dangers he felt and the threats made against his life by Frye. Tatum states that Dayton, too, did nothing to protect him. He asserts that Frye viciously assaulted him on October 28, 2007, by punching him in the face and head and that as he attempted to push Frye away, his fingers were caught in Frye's mouth.[4]

Tatum states that after reporting the assault to Dayton he was immediately taken to the WCI medical department where treatment began and was continued. He asserts that Defendants have not submitted all medical records for treatment from the assault. *Id*. Tatum states that soon after the assault he began to experience dizziness, falls, and unconsciousness. He admits that at the beginning of these symptoms he did not complain, thinking they would stop. When the symptoms continued and worsened Tatum states that he filed an ARP. He argues that he was absolutely certain that the symptoms arose from the assault because of their proximity to the incident, but later learned that the symptoms were not from the assault but were from a condition stemming from his prescribed hypertension medication, Atenolol.

Tatum also takes issue with the ARP process relating to the procedural dismissal of his grievances. He complains that state correctional employees failed to observe agency regulations and procedures and in particular Division of Correction Directive 185-002, which relates to the ARP

---

[4] Tatum states that he knew Frye had "cracked" the bones in his fingers and x-rays were ordered. He questions why Defendants did not submit the x-ray results with their motion.

process. Tatum argues that the Hamilton and Dayton Declarations are "unlawful documents" because they are based and derived from Warden Shearin's unlawful ARP response.

Tatum also disputes Defendants' claim that there was no objective corroboration of his syncope. He claims that on September 1, 2008, professional doctors and specialists observed his lightheadedness and dizziness and also witnessed his collapse in the emergency room of the Peninisula Regional Medical Center. Paper No. 21. He attaches documents in support of the objective confirmation. Tatum alleges that the majority of medical records submitted by Defendants are "irrelevant" and again claims that certain ARPs and medical documents were not submitted to the Court and are attached to his responsive pleading. He asserts that treatment for dizziness continues and he has been diagnosed with an incurable disease of SSS, which "released its symptoms about the same time as the assault."[5]

Tatum further claims that Hamilton and Dayton's declaration are false and unreliable. He asserts that that it has been well established that he was assaulted and injured by Frye. Tatum claims that he filed a timely ARP and if Warden Shearin had timely responded, "perhaps…Hamilton and Dayton would have had a more precise memory of Plaintiff telling them beforehand of the threats by inmate Frye." He seemingly claims their Declarations cannot be held reliable because their affirmations were made twenty months after the October 2007 incident.[6] Tatum claims that both correctional officers are lying.[7]

---

[5] Tatum speculates that "perhaps the assault activated the symptoms." Paper No. 21 at pg. 12.

[6] Tatum cites to several cases involving reliability of delayed witness identification in criminal cases.

[7] Tatum's statements are not made in declaration or affidavit form and are not made under oath.

6

Tatum claims that as Defendants have admitted Frye's assault on him and the medical records prove his injuries, they should be held liable for damages.[8]

Analysis

The Complaint sets out a failure-to-protect claim under the Eighth Amendment and also raises a due process claim with regard to the ARP grievance process. Tatum's claim against Shearin relates to the grievance process.[9] He asserts that Shearin initially failed to respond to his ARPs at the institution level, resulting in his filing appeals to the Commissioner, who referred the grievances back to WCI. Tatum alleges that Shearin eventually responded to his ARP over eight months after it was originally filed.

The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, under the law in this circuit, the grievance process established for Division of Correction inmates does not implicate a Fourteenth Amendment due process right. Further, Tatum's Complaint fails to allege that any deficiencies and improper acts associated with the ARP process have caused him injury by denying him access to courts, *e.g.,* impeding his ability to file federal or state lawsuits.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must

---

[8] As an eleventh-hour claim, Tatum states that Frye, his assailant, is serving a life sentence and is a maximum security inmate. He claims that he "is not, and should not have housed with [Frye] in the first place." Paper No. 21 at pg. 21. The Court shall not consider this delayed and speculative claim.

[9] No personal liability has been alleged or established against Shearin with regard to the failure-to-protect claim. Further, to establish supervisory liability on the part of the Warden, Tatum must show that: (1) the Warden had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the Warden's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the Warden's inaction and the particular constitutional injury suffered by plaintiff. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).

both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See DeLonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

Tatum has been called upon to rebut Defendants' Declarations and materials with his own verified documents, to establish a genuine dispute of material fact. The following facts are not in dispute. On October 27, 2007, Tatum was assaulted by his cellmate. He sustained a swollen left eye, abrasions to his left cheek, and damage to his index and pinky finger from Frye's bite to his hand. These objective injuries healed in normal course and Tatum did not raise complaints about his eye, cheek, digits, or hand. Rather, he periodically complained of dizziness and losing consciousness. Objective diagnostic testing and evaluations did not link his symptoms to the

---

Tatum has provided no evidence demonstrating any of these factors.

October 2007 incident. Healthcare professionals first speculated that his symptoms were related to his psychotropic medication. A later diagnosis attributed his bouts of dizziness and syncope to SSS, caused by the beta blocker medication Atenolol.[10]

Defendants Dayton and Hamilton's actions or inactions are plainly in factual dispute. Defendants provide personal affidavits affirming that Tatum never informed them of threats from his cellmate Eugene Frye prior to the October 27, 2007 assault. Tatum continues to allege that he notified them of the threats. The problem with Tatum's rebuttal is that he has provided no particular facts regarding his communications with the correctional officers.[11] More importantly, his rebuttal allegations to Dayton and Hamilton's Declarations are not made under oath. It is Tatum's burden to adequately refute Defendants' responsive pleading by providing evidence that Dayton and Hamilton were deliberately indifferent to a substantial risk of harm and he sustained serious injury. He has not made that showing.

---

[10] Tatum litigated the issue of the Atenolol prescription and the development of SSS and bradycardia against the private health care provider in *Tatum v. CMS*, Civil Action No. WDQ-08-875 (D. Md.).

[11] At all times Tatum has stated that he informed Drayton and Hamilton of threats from Frye, but he never discusses the form of the communications, in what context they were made, what precise information was given to the officers, and the nature of their response, if any.

IV. Conclusion

For the previously stated reasons, judgment will be granted for the Defendants.[12]  Tatum's cross-summary judgment motion will be denied.


Date: February 18, 2010                              _____/s/_____
                                                    William D. Quarles, Jr.
                                                    United States District Judge

---

[12] For reasons noted by Defendants' counsel, Tatum's claim against the Department of Public Safety and Correctional Services ("DPSCS") will be dismissed.  Neither the State, nor an arm of the State, is a "person" within the meaning of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989).  Moreover, the Eleventh Amendment bars a suit for monetary damages in federal court by a private individual against an unconsenting state or its agencies, absent waiver or congressional abrogation of sovereign immunity pursuant to section five of the Fourteenth Amendment.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 56-58 (1996); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984).  As a state agency, the DPSCS is protected from suit for monetary damages by sovereign immunity under the Eleventh Amendment.